Ali M.M. Mojdehi, State Bar No. 123846
Janet D. Gertz, State Bar No. 231172
Brian W. Byun, State Bar No. 264506
Allison M. Rego, State Bar No. 272840
**BAKER & McKENZIE LLP**
12544 High Bluff Drive, Third Floor
San Diego, CA 92130-3051
Telephone: +1 858 523 6200
Facsimile: + 1 858 259 8290
Ali.Mojdehi@bakermckenzie.com
janet.gertz@bakermckenzie.com
Brian.Byun@bakermckenzie.com
allison.rego@bakermckenzie.com

Attorneys for Creditor
AG/ICC Willows Loan Owner, L.L.C.

E-filed: November 22, 2011

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

In re:

CAREFREE WILLOWS LLC,

           Debtor.

Case No. BK-S-10-29932-MKN

Chapter 11

**AG/ICC WILLOWS LOAN OWNER, L.L.C.'S OBJECTION TO DEBTOR'S MOTION FOR EX PARTE TEMPORARY RESTRAINING ORDER AND FOR PRELIMINARY INJUNCTION**

Hearing Date: November 29, 2011
Hearing Time: 9:30 a.m.

      AG/ICC Willows Loan Owner, L.L.C., ("AG"), senior secured creditor in the above-captioned bankruptcy case, by and through its undersigned counsel, hereby respectfully submits this Objection (the "Objection") to the Motion by Carefree Willows, LLC, the debtor and debtor in possession (the "Debtor") for Ex Parte Temporary Restraining Order and for Preliminary Injunction (the "Motion"). This Objection is supported by the memorandum below, the pleadings and papers on file, and any oral argument entertained by the Court, as well as by the declaration of Janet Dean Gertz (the "Gertz Declaration") filed concurrently herewith. Furthermore, in light of the Guarantors' deposition testimony, AG/ICC intends to present evidence at the hearing on the Motion, which shall include without limitation AG/ICC's calling, at a minimum, Mr. Ed McDonough of Alvarez and

1

Marsal as an expert witness at the hearing on the Motion. AG/ICC may potentially may call other expert witnesses as well, as necessitated by a further review of the deposition transcripts, which are still being finalized.

## I. INTRODUCTION

The Debtor has petitioned this Court seeking an injunction against AG/ICC to prevent AG/ICC from pursuing its state law remedies against the guarantors of the Debtor's debt to AG/ICC: Kenneth L. Templeton, Templeton Family Trust Dated October 8, 1993, Ken II Trust Dated May 4, 1998, Carefree Holdings Limited Partnership, and MLPGP, LLC (collectively, the "Guarantors"). The requested injunction should not issue. As explained below, the injunction sought by the Debtor under 11 U.S.C. § 105 must satisfy the requirements for the issuance of a preliminary injunction under the "traditional standard." Here, there are serious questions regarding the Debtor's ability to demonstrate success on the merits—in this context that it will be able to promptly reorganize in a manner that will ensure prompt and full payment of AG/ICC's claim. Likewise, the Debtor has not met its burden of proof to demonstrate irreparable harm, where the Guarantors are not directly involved in the day-to-day operations of the Debtor and otherwise are replaceable, should the need arise. Finally, the facts to be adduced at the hearing will demonstrate that the Guarantors affirmatively transferred assets to a bankruptcy remote entity, all the while knowing that the Debtor had defaulted on its obligations to AG/ICC. Under such circumstances neither equity nor the public interest would recommend the granting of an injunction that will enjoin enforcement of the guaranty obligation against the Guarantors. As such, AG/ICC respectfully requests that the Court would deny the Debtor's Motion.

## II. THE SUBJECT MATTER JURISDICTION OF THE BANKRUPTCY COURT TO ENJOIN STATE LAW CLAIMS OF NON-DEBTORS IS LIMITED TO "HEARING" THE MATTER IN LIGHT OF RECENT SUPREME COURT AUTHORITY

The subject matter jurisdiction of this Court to both hear and determine this proceeding needs to be determined as a threshold matter. *Section* 105 does not provide an independent source of federal subject matter jurisdiction. *See In re Combustion Engineering, Inc.*, 391 F.3d 190, 224-25 (3d Cir. 2004). "Thus, before considering the merits of any § 105 injunction, a bankruptcy court must establish that it has subject matter jurisdiction to enter the injunction. *In re W.R. Grace & Co*,

2

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+ 1 858 523 6200

AG/ICC'S OBJECTION TO DEBTOR'S MOTION FOR EX PARTE TRO AND FOR PRELIMINARY INJUNCTION
CASE NO. BK-S-10-29932

SDODMS1/714833.2

591 F.3d 164, 170 (3d Cir. 2009).

As an initial matter, this Court has subject matter jurisdiction over this injunction proceeding, whether it is one "arising in" or one "related to" the bankruptcy case. *American Hardwoods, v. Deutsche Credit Corp.*, 885 F.2d 621, 624 (9th Cir. 1989). That said, it is necessary to determine the scope of the Court's jurisdiction, which is determined by whether this proceeding is core or non-core under 28 U.S.C. § 157(a). In this respect, the proper characterization of the action as core or non-core under 28 U.S.C. § 157(a) is dependent, not upon the Debtor's request under *section* 105, but rather must be based upon the nature of the underlying action that is sought to be enjoined. "The mere filing of a motion for a § 105 injunction to enjoin a proceeding in another forum cannot be a jurisdictional bootstrap enabling a Bankruptcy Judge to exercise jurisdiction that would not otherwise exist." *Celotex Corp. v. Edwards*, 514 U.S. 300, 327 (1995).

The claim that is sought to be enjoined here is strictly a state law claim. Therefore, and as the Debtor concedes, this proceeding is not "core"[1] but rather is one "*related to* a case under Title 11." 28 U.S.C. § 157(a).[2] The characterization of the proceeding as a related one is significant. As was recently reiterated by the Supreme Court in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), although the bankruptcy courts have jurisdiction under 28 U.S.C. § 157(c) to "*hear*" related proceedings, none other than an Article III court may "*decide*," that is, enter final judgment, in a proceeding that is non-core. Ninth Circuit authority holds that the granting of a preliminary injunction by a bankruptcy court is a *final* order:

> The injunction is in effect an extension of the automatic stay, halting another proceeding to avoid disruption of the debtor's reorganization. We have held that a decision granting or denying relief from a § 362(a) automatic stay constitutes a final order for purposes of appellate jurisdiction.

*Solidus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations, Inc.)*, 502 F.3d 1086, 1092 (9th Cir. 2007); *see also In re Calpine Corp.*, 365 B.R. 392, 407 (Bankr. S.D.N.Y. 2007) (an injunction issued under Section 105 is "a final injunction of limited duration."). That is even more

---

[1] Moreover, the Debtor has not alleged that the action is core in its Complaint.
[2] A proceeding is "related to" a bankruptcy case if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984).

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+ 1 858 523 6200

AG/ICC'S OBJECTION TO DEBTOR'S MOTION FOR EX PARTE TRO AND FOR PRELIMINARY INJUNCTION
CASE NO. BK-S-10-29932

SDODMS1/714833.2

the case where the request, as here, is for an injunction *that continues post-confirmation*. The Debtor's request that this court would enter an injunction against AG/ICC thus impermissibly exceeds the scope of this Court's jurisdiction under section 157(c), which is limited to non-dispositive matters. As was previously noted by Justice Stevens in his dissent in *Celotex* more than 15 years ago:

> The unambiguous text of § 157(c)(1) requires that the bankruptcy judge's participation in related proceedings be merely advisory rather than adjudicative. In my view, having jurisdiction to grant injunctions over cases that one may not decide is inconsistent with such an advisory role.

514 U.S. at 323. Judge Stevens went on to note the anomaly of permitting a judge with no jurisdiction to decide a matter to enjoin a judge that *does* have jurisdiction to decide it. *Id.* at 323 n.11.

AG/ICC agrees with the Debtor that this proceeding is non-core. Moreover AG/ICC does not consent to entry of final orders or judgment by this Court. Fed. R. Bankr. Proc. 7012(b). The Debtor seeks to enjoin state law claims currently pending in a state court—and also seeks to extend the duration of that injunction post-confirmation. As a result (and particularly in light of the recent Supreme Court determination in *Stern*) this Court may only hear the matter but may not adjudicate it nor enter a dispositive order.

Moreover, to the extent that the Debtor is also seeking to enjoin the *state court*, *section* 105 does not confer jurisdiction on this Court at all. *State Street Bank and Trust Co. v. Park (In re Si Yeon Park, Ltd.)*, 198 B.R. 956 (Bankr. C.D. Cal. 1996) (holding that under principles of *Marathon*, a bankruptcy court may not enjoin a state court in a related proceeding under section 105).

### III. THE STANDARD FOR A STAY UNDER 11 U.S.C. § 105 MUST BE DECIDED UNDER THE TRADITIONAL STANDARD FOR A PRELIMINARY INJUNCTION

Under 11 U.S.C. § 105(a) a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The Ninth Circuit has adopted the majority rule that the "usual preliminary injunction standard" applies to stays of proceedings against non-debtors issued under *section* 105. This is because "[t]he usual standard helps to ensure that stays would not be granted lightly" *Solidus Networks, Inc. v. Excel Innovations, Inc. (In re*

4

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+ 1 858 523 6200

AG/ICC'S OBJECTION TO DEBTOR'S MOTION FOR EX PARTE TRO AND FOR PRELIMINARY INJUNCTION
CASE NO. BK-S-10-29932

SDODMS1/714833.2

*Excel Innovations, Inc.)*, 502 F.3d 1086, 1095 (9th Cir. 2007).

Under the Supreme Court's recent clarification for the standard to be applied in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008) (hereinafter, "*Winter*"), the moving party must show (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of the preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Id.* at 20 (citations omitted).[3] *See also Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126-27 (9th Cir. 2009). Moreover, as noted by the District Court for the District of Nevada, "[t]he test is presented as a four-part conjunctive test." *Foley v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 72212 at *7 (D. Nev. July 5, 2011) (citing *Winter*). As such, every factor in the test must be independently satisfied, or the injunction is not warranted. *See Winter*, 555 U.S. at 20-21.

The Debtor has the dual burdens of coming forward with proof and of persuasion on each factor, each of which must be demonstrated by a preponderance of the evidence. *See In re Third Eighty-Ninth Assocs.*, 138 B.R. 144, 146 (S.D.N.Y. 1992). As discussed below, the Debtor has failed to meet its burden on any of the factors, much less all of them.

## IV. THE DEBTOR HAS NOT SHOWN THAT THERE IS A LIKELIHOOD OF A SUCCESSFUL REORGANIZATION

In connection with the first prong, likelihood of success, the point of reference is the likelihood of the debtor achieving a successful reorganization. *See Excel Innovations*, 502 F.3d at 1095. Under the *Winter* test, a debtor seeking to stay an action against a non-debtor must show that it is "*likely*" to achieve a successful reorganization. *Winter*, 555 U.S. at 20 ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits ...").

### A. The Debtor Is Not Proposing a Plan That Will Pay AG/ICC's Claim "In Full"

First of all, in a situation where a Debtor is seeking to enjoin a senior secured creditor from enforcing a guaranty against a non-debtor, in order to satisfy the first prong of the preliminary

---

[3] In this respect, cases that do not adhere to the proper standard may not be relied upon. For example, cases that do not require the movant to show irreparable harm and only require that the injunction would conform to the objectives of the Bankruptcy Code are not good law in the Ninth Circuit. Likewise, cases that do not apply the standard for a preliminary injunction required under *Winter*, likewise, are no longer good law.

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+ 1 858 523 6200

5

AG/ICC'S OBJECTION TO DEBTOR'S MOTION FOR EX PARTE TRO AND FOR PRELIMINARY INJUNCTION
CASE NO. BK-S-10-29932

SDODMS1/714833.2

injunction standard, a debtor must demonstrate that it will be able to promptly confirm a plan that will pay the enjoined creditor *in full*. For example, *In Costa and Head Land Co. v. National Bank of Commerce (In re Costa and Head Land Co.)*, 68 B.R. 296, 300-01 (N.D. Ala. 1986), the district court noted that satisfaction of the first factore required "a careful and factually supported predetermination of the probability of a successful reorganization and of the 'payment in full' of the preliminarily enjoined creditor." The district court further commented that any impairment of an enjoined creditor's claim in connection with the plan is inconsistent with the waiver of the bond requirement that is provided under Fed. R. Bankr. 7065. Likewise, in *In re Larmar Estates, Inc.*, the bankruptcy court held that probability of success on the merits referred to "the probability of the debtors' having plans of reorganization confirmed in the near future which would provide for 100% payment to" the secured creditor. 5 B.R. 328, 331 (Bankr. E.D.N.Y. 1980).

Here, the bankruptcy case has been pending for a long time. The Debtor has submitted a proposed Plan, but the Plan proposes to impair AG/ICC's claim, and to unilaterally convert AG/ICC's fully matured loan for the secured portion into a new mortgage with a term of 30 years at an as yet undetermined rate of interest. Moreover, the Debtor is proposing to "cram-down" its plan over AG's objection. Contrary to the Debtor's assertions, (Motion at 10), such treatment does *not* represent payment in full. As noted above, AG/ICC's loan to the Debtor is fully matured. While the Debtor cites to no authority for its assertion that such an approach is allowed, authority stating that it is inequitable to issue an injunction where the debtor seeks to cram down and/or impair the enjoined creditor's claim—is extensive. *See, e.g.*, *In re Vitro, S.A.B. de C.V.*, 2011 Bankr. LEXIS 2468, *27-28 (Bankr. N.D. Tex. June 24, 2011); *In re M.J.H. Leasing, Inc.*, 328 B.R. 363, 367 (Bankr. D. Mass. 2005) (quoting *In re Apollo Molded Prods., Inc.*, 83 B.R. 189, 193-194 (Bankr. D. Mass. 1988)) (citing *Larmar Estates* favorably). As such, the Debtor has not satisfied the first prong of the standard.

### V. THE DEBTOR HAS NOT SHOWN THAT THERE IS A STRONG LIKELIHOOD OF IRREPARABLE INJURY TO IT IF THE INJUNCTION IS NOT GRANTED

Under the Supreme Court's directive in *Winter*, a plaintiff seeking an injunction must demonstrate that there is a likelihood of irreparable injury in the absence of an injunction. 555 U.S.

6

AG/ICC'S OBJECTION TO DEBTOR'S MOTION FOR EX PARTE TRO AND FOR PRELIMINARY INJUNCTION
CASE NO. BK-S-10-29932

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+ 1 858 523 6200

SDODMS1/714833.2

at 22. The irreparable injury that must be shown is to the Debtor, not to the Guarantors. As discussed below, the Debtor has failed to meet its burden to show that irreparable harm to itself is likely. Moreover, in request to the irreparable harm that must be shown, the Debtor has relied upon a discredited standard. (*See* Motion at 5 (referring to the "possibility" of irreparable injury)). Irreparable harm must be "likely"—not just "possible." *Foley v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 72212 (D. Nev. July 5, 2011). As discussed below, there is no likelihood of irreparable injury to the Debtor if the state court litigation is allowed to proceed.

### A. The Debtor Has Failed to Demonstrate that the Impact of the State Court Litigation on the Guarantors' Time Would Cause Irreparable Injury to the Debtor

The Debtor cites to *In re PTI Holding Corp.*, 346 B.R. 820 (Bankr. D. Nev. 2006),[4] for the principle that "[C]ourts have easily found that the loss of [ ] key participants at a crucial period in the life and reorganization of the debtor may constitute irreparable harm to the estate and to the reorganization efforts." For the reasons below, the rationale in *PTI Holding Corp.* is not applicable here.

#### 1. The Guarantors Are Neither "Irreplaceable" Nor Key Management of the Debtor

First, the Debtor appears to us to have glossed over the requirement that the person's participation is, in fact, *"key."* An oft-cited case that construes what it means to be a "key participant," and specifically in connection with an injunction that seeks to restrain litigation against the guarantors of the debtor's obligations, is *The Chase Manhattan Bank, N.A. v. Third Eighty-Ninth Assocs. (In re Third Eighty-Ninth Assocs.)*, 138 B.R. 144 (S.D.N.Y. 1992). In *Chase Manhattan*, the district court noted that injunctions have been given in such cases only where the guarantors were truly irreplaceable and "key" to the debtor's operations and the success of debtor's reorganization. *Id.* at 147. Examples where a guarantor was found to be such were: (i) where the individual was an officer, devoted over 50% of his time to the debtor's operations, *and* was "irreplaceable;" (ii) where the guarantors *personally* performed "all or most of the debtor's business; and (iii) and where the

---

[4] It is important to note that *PTI*, as well as many of the cases it cited, were using an incorrect legal standard for determining the presence of irreparable harm.

7

AG/ICC'S OBJECTION TO DEBTOR'S MOTION FOR EX PARTE TRO AND FOR PRELIMINARY INJUNCTION
CASE NO. BK-S-10-29932

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+ 1 858 523 6200

SDODMS1/714833.2

debtor's general partner performed all or most of the debtor's business. *Id.* To the contrary, where the guarantor is not an officer of the debtor, and/or his role "does not extend beyond policy making" or marketing efforts, an injunction is not warranted. *Id.* at 148. Likewise, where the management of the debtor is performed by a management company or under the direct supervision of others, an injunction is not warranted. *Cf. id.* The debtor must also demonstrate that the insiders are not fungible – that is, they are the "only persons" that are capable of aiding the reorganization. *Stanford v. Foamex L.P.*, 2009 U.S. Dist. LEXIS 32405, (E.D. Pa. Apr. 15, 2009). For example, in *Nevada Power Co. v. Calpine Corp. (In re Calpine Corp.)*, 365 B.R. 401, 410-12 (S.D.N.Y. 2007), the employee held proprietary technical knowledge regarding the debtor's operations that was not held by any other person, was in charge of highly technical transmission matters critical to the business, and was also doing the work of 10 former employees.

Here, the facts do not merit an injunction. All management of the Debtor has been delegated to Ken Templeton Realty & Investment, Inc., a management company (the "Management Company"), which is paid for its services. *See* Gertz Decl., Ex. A [50:22-51:6; 52:10-14; 53:5-7; 58:9-16], Ex. B [32:23-34:1] & Ex. C. Here, none of the Guarantors are "irreplaceable" or "key" employees of the Debtor, because all aspects of the Debtor's operations are performed by the Management Company, which itself has at least six employees that handle providing services to the Debtor along with other entities. *See* Gertz Decl., Ex. A [51:12-16; 56:23-58:8; 58:9-16; 60:17-63:10; 89:3-17]; Ex. B [30:8]. Furthermore, the actual day-to-day operation of the debtor is performed by the Debtor's own on-site employees, who are themselves under the supervision of an on-site property manager. *See id.* [60:17-63:10]. None of the Guarantors personally perform "all or most of the debtor's business," which activities are performed instead primarily by the on-site employees and otherwise by the Management Company. The finances of the Debtor are primarily handled by a CFO, who is employed by the management company. *See id.* [56:10-22]. Templeton serves in no formal capacity with the Debtor and has no title or assigned job responsibilities. *See* Gertz Decl., Ex. B [30:21-23]. His testimony indicates that he visits the Property frequently, but it appears that this attention is motivated by his pecuniary interest as an indirect equity owner not only necessity by the Debtor. *See* Gertz Decl., Ex. A [72:6-75:18]; Ex. B [31:14-20]. His input is

8

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+ 1 858 523 6200

AG/ICC'S OBJECTION TO DEBTOR'S MOTION FOR EX PARTE TRO AND FOR PRELIMINARY INJUNCTION
CASE NO. BK-S-10-29932

SDODMS1/714833.2

substantially limited to policy making and/or marketing efforts, not to management or day-to-day operations.

Furthermore, it must be noted that, other than Carefree Holdings, none of the Guarantors hold *direct* equity interests in the Debtor. Under such facts, the non-owner Guarantors are properly characterized as "independent parties who had voluntarily agreed to fund the debtor's reorganization plan." *Veeco Inv. Co v. Mercantile Nat'l Bank of St. Louis (In re Veeco Inv. Co.)*, 157 B.R. 452 (Bankr. E.D. Mo. 1993). *In Veeco Investment Co.*, the court denied the request for an injunction of guarantors who, similar to here, held no direct equity interest in the debtor, but held a 17 percent interest through trusts, finding that there was not a significant enough relationship with the debtor. *Id.* at 455-56.

The Debtor has made certain assertions in its Motion to try to support a finding that the Guarantors are each "key." These assertions are, however, belied by the factual record and should be ignored. Shown in table form below are the Debtor's assertions in its Motion, compared with the actual facts, based upon testimony that was elicited in deposition from Messrs. Templeton and Close:

| Assertion | Testimony |
|---|---|
| Templeton is a "hands on operator" of the Property. (Motion at 3) | The Property is managed by the Management Company, pursuant to a comprehensive management agreement. *See* Gertz Decl., Ex. A [50:22-51:6; 52:10-14; 53:5-7; 58:9-16], Ex. B [32:23-34:1] & Ex. C.<br><br>The management company is paid to provide "turnkey" management services. *See* Gertz Decl., Ex. A [53:11-17; 58:9-16].<br><br>The management company employs six to seven personnel and otherwise has hired nine on-site personnel to manage and oversee the day-to-day operations of the Property. *See* Gertz Decl., Ex. A [51:12-16; 56:23-58:8; 58:9-16; 60:17-63:10; 89:3-17]; Ex. B [30:8].<br><br>Templeton is not the person at the Management Company that interfaces with the day-to-day |

Baker & McKenzie LLP
12544 High Bluff Drive, Third Floor
San Diego, CA 92130
+ 1 858 523 6200

SDODMS1/714833.2

9

AG/ICC'S OBJECTION TO DEBTOR'S MOTION FOR EX PARTE TRO AND FOR PRELIMINARY INJUNCTION
CASE NO. BK-S-10-29932

| | |
|---|---|
| | operations of the Property. An employee of the Management Company or the on-site manager is the person responsible for day-to-day operations and management. *See* Gertz Decl., Ex. A [56:23-58:8; 60:8-69:21; 89:18-20]; Ex. B [32:8-16]. |
| The Debtor successfully operates the Property through the efforts of Templeton. (Motion at 8) | Templeton does not operate the Property. *See* Gertz Decl., Ex. A [56:23-58:8; 89:3-91:9].  Templeton mainly sets policy, does budgeting and maintains "resident relations" for the Property, in conjunction with others. *See* Gertz Decl., Ex. A [69:24-70:4; 72:6-75:18; 76:7-80:1]. |
| Templeton has vast experience managing the Property. (Motion at 9); | Templeton does not "manage" the Property. The Property is managed by a management company, which is paid for its management services and hires on-site management personnel to handle the management and oversee day-to-day operations of the Property. *See above.* |
| Templeton is prepared to continue in his role as manager of the Debtor post-confirmation. (*Id.*); | *See above.* |
| The Debtor is dependent upon the management of the Debtor by the Guarantors. (Motion at 10) | None of the Guarantors "manage" the Property. *See* Gertz Decl., Ex. A [50:22-51:6; 52:10-14; 53:5-7; 58:9-16], Ex. B [32:23-34:1] & Ex. C. The management company is not a guarantor. |

In summary, none of the Guarantors are *principally* responsible for collecting rent and common charges, paying bills, making repairs, assuring that the building is rented to its highest capacity, conducting tenant relations, or supervising building staff. Nor do the Debtor's employees who do directly serve in these capacities do so under any of the Guarantors' direct supervision. *Cf.* 138 B.R. at 147. In light of such, the continuance of the State Court Litigation would not hinder the Debtor's day-to-day operations or reorganization efforts.

  **2. There is No Significant Distraction Where The Plan is Already Submitted, and the State Court Litigation Has Been Fully Briefed for Determination on Summary Judgment**

Second, the Debtor does not discuss the practical facts concerning the current status of the

Baker & McKenzie LLP
12544 High Bluff Drive, Third Floor
San Diego, CA 92130
+ 1 858 523 6200

AG/ICC'S OBJECTION TO DEBTOR'S MOTION FOR EX PARTE TRO AND FOR PRELIMINARY INJUNCTION
CASE NO. BK-S-10-29932

SDODMS1/714833.2

State Court Litigation vis-à-vis the status of the bankruptcy case. These facts are, however, highly relevant to the issue of whether the State Court Litigation has any impact on the Debtor, *per se*. The premise of the Debtor's Motion is that the State Court Litigation would "distract" the Guarantors from their other activities in connection with the Debtor and its reorganization efforts. If that premise is not true, irreparable injury cannot be demonstrated to be "likely."

First, when the debtor's plan has already been submitted and the debtor's request for an injunction follows later in the game, a claim of "distraction" is not generally well taken. *See M.J.H. Leasing, supra*, 328 B.R. at 371. Here, as in *M.J.H. Leasing*, the Debtor has already submitted its Plan—as amended. Moreover, the State Court Litigation was filed months ago. The Debtor did not seek an injunction until after the State Court had entered a judgment that the Guarantors were each jointly and severally liable on the guaranty. Not until after that point in time did the Debtor amend its Plan to provide for an injunction against AG/ICC and for funding by the Guarantors, which was then made expressly conditional upon the State Court Litigation being enjoined post-confirmation.

Nor will the Guarantors be impaired by the State Court Litigation in their efforts to formulate or negotiate the Debtor's Amended Plan. As stated above, the Amended Plan and Disclosure Statement has already been filed. Moreover, the deposition testimony by the Guarantors was that any remaining details concerning the proposed funding are now in the hands of the Guarantors' attorneys, because the remaining issues are strictly "legal" issues. *See* Gertz Decl., Ex. A [100:20-25; 103:13-15; 116:10-13; 117:10-11; 215:1-7].

Second, where the state court litigation may be disposed of without trial, any claim that it would be disruptive of the debtor's reorganization efforts must be discounted. *Apollo Molded Prods., Inc. v. Kleinman (In re Apollo Molded Prods., Inc.)*, 83 B.R. 189, 193 (Bankr. D. Mass. 1988). Specifically, where a guarantor has no defenses and/or where the action will be disposed of through a default or summary judgment, there is no irreparable injury to the debtor in allowing the action to proceed. *Id*. Here, the State Court Litigation is largely completed. There have been no depositions or anything else which would require meaningful time for the Guarantors, as it was decided on summary judgment. The Guarantors have already been found liable on the guaranty obligation. They have no defenses to raise to liability, having admitted to their liability on the

11

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+ 1 858 523 6200

AG/ICC'S OBJECTION TO DEBTOR'S MOTION FOR EX PARTE TRO AND FOR PRELIMINARY INJUNCTION
CASE NO. BK-S-10-29932

SDODMS1/714833.2

guaranty at the hearing on the motion for summary judgment. *See* Gertz Decl., Ex. E. Summary judgment has already been granted on liability, and judgment has been entered. All that remains to be determined is the damages due, and that issue has already been fully briefed and merely awaits oral argument by the parties, after which it will be under submission by the State Court. Furthermore, the Debtor's contentions regarding the drain on the Guarantors' finances appears overwrought. This is not a case involving multiple suits and a multitude of discovery demands. *Cf. Apollo Molded Prods.*, 83 B.R. at 193. The Debtor points to the attorney fees that have previously been spent by the Guarantors as a reason for granting the injunction. But, those fees have already been incurred, and we are at a loss to discern how an injunction at this point would change that fact.

In light of the above, the Debtor has not demonstrated that irreparable harm is "likely."

**B.  The Debtor Cannot Establish Irreparable Harm Where it Has Provided Only Vague and Ambiguous Statements Regarding the Supposed Funding Commitment by the Guarantors**

As an alternative basis for demonstrating irreparable harm, the Debtor contends that the funding by the Guarantors is necessary to the Debtor's reorganization, but that the "State Court Litigation . . . is interfering with the recoveries of the Guarantors that will [be] used to fund the Debtor's Plan." (Motion at 10). The Debtor does not explain what "recoveries" it is referring to. Nor could the Guarantors point to anything on questioning in deposition. Moreover, the Guarantors testified that the amount used to fund the Plan are sitting in cash or other liquid assets in an account held by an entity Templeton controls, Templeton Investment Corporation. *See* Gertz Decl., Ex. A [102:3-5; 107:7-108:12; 174:16-175:4]; Ex. B [54:7-17]. Indeed, as discussed further below, Close testified that Templeton quietly transferred at least ▅▅▅▅ in liquid assets—and possibly more—to this bankruptcy remote entity, sometime between January 2010 and September 2011. *See* Gertz Decl., Ex. A [174:10-179:15]; Ex. B [97:14-16].

Setting aside the fact that the Debtor has not met its burden to establish that the Guarantors could not *collectively* satisfy the State Court Judgment and fund the Debtor's Plan (indeed, the Guarantors provided no details on Carefree Holdings' assets), it is clear that the Guarantors' funding is conditional in nature, and will not be forthcoming unless a post-confirmation injunction is granted. "The conditional nature of the infusion casts serious doubt on whether any funds actually are

12

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+ 1 858 523 6200

AG/ICC'S OBJECTION TO DEBTOR'S MOTION FOR EX PARTE TRO AND FOR PRELIMINARY INJUNCTION
CASE NO. BK-S-10-29932

SDODMS1/714833.2

available to the Debtor for use in the reorganization." *In re Third Eighty-Ninth Assocs.*, 138 B.R. at 149; *see also Costa & Head Land Co.*, 68 Bankr at 301-02.

Moreover, as was elicited in deposition, the supposed funding is far from determined. None of the details have been developed. *See* Gertz Decl., Ex. A [105:9-11; 116:6-13]; Ex. B [41:18-42:14]. Nothing is in writing. *See id.*, Ex. A [101:20-22]. The form of the funding, whether it will take the form of debt or equity, and its impact on the capital structure is still being developed—by the lawyers, no less. *See id.*, Ex. A [100:3-8, 20-25]; Ex. B [42:15-22; 111:16-20]. Who will contribute what is undecided. *See id.*, Ex. A [120:2-22]; Ex. B [41:18-42:14; 43:5-15]. All that appears to be decided is that Templeton Investment Corporation will "loan" the Guarantors the funds, and that one or more of the Guarantors will manage to use that money in some shape or form to fund the Debtor's Amended Plan. *See id.*, Ex. A [100:20-25]; Ex. B [91:7-10]. As such, none of the Guarantors appear to be using their personal assets to fund the Debtor's Amended Plan but are instead merely pass-through entities for the funding for legal reasons. *See id.*, Ex. A [106:4-16]; *see also Third Eight-Ninth Assocs.*, 138 B.R. at 148 (stay not justified "where general partners were extremely vague on their projected personal financial commitments to the Debtor's rehabilitation") (internal citation and quotation marks omitted).

More concerning, there is also great doubt as to whether the funds are actually available to the Debtor. Close testified that the entity holding the funds that are to be used for the Plan funding was insolvent when the approximate ▆▆▆▆▆▆▆ in cash was transferred to it. *See* Gertz Decl., Ex. B [88:17-25]. Because the Guarantors failed to produce a financial statement for Templeton Investment Corporation, the Debtor cannot meet is burden to demonstrate that the funds are, in fact, presently unencumbered. In addition, Templeton testified that he is currently estranged from his wife, who is suing him for divorce. *See* Gertz Decl., Ex. A [14:21-22; 16:14-15]. Templeton also testified that his wife has made claims to his assets—which would necessarily include those assets he has transferred to Templeton Investment Corporation, which he now proposes to use to fund the Plan. *See id.* [222:11-18].

Finally, the comments of the Bankruptcy Court for the District of Massachusetts are quite relevant here and otherwise speak directly to the impropriety of the Debtor's request:

13

AG/ICC'S OBJECTION TO DEBTOR'S MOTION FOR EX PARTE TRO AND FOR PRELIMINARY INJUNCTION
CASE NO. BK-S-10-29932

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+ 1 858 523 6200

SDODMS1/714833.2

> We do not believe, in any event, that the intention of a debtor's principal to devote personal assets to the reorganization should necessarily have the talismanic effect of shielding him from suit on his personal obligations. . . . A debtor must go further and show that a plan calling for a 100% payment to the creditor is imminent, so that a temporary restraint against the creditor taking action will cause little damage to the creditor. Short of those circumstances, the act of a guarantor or accommodation maker transferring his assets to a debtor in order to facilitate partial payment to the creditor and avoid his own personal liability smacks of a fraudulent transfer.

*Apollo Molded Products, Inc.*, 83 B.R. at 193-94 (citing *In re Larmar Estates, Inc.*, 5 B.R. 328 (Bankr. E.D.N.Y. 1980)).

### C. The Debtor Has Failed to Demonstrate Any Irreparable Injury to Its Reorganization Efforts

#### 1. The Debtor Has Many Other Remedies at Law

The Debtor's main contention why it will suffer irreparable harm may be summarized as follows: that (i) it will be irreparably harmed if it cannot confirm its Amended Plan (ii) the Guarantors have demanded a post-confirmation injunction against AG/ICC as a condition of their funding the Amended Plan; and (iii) the Debtor cannot confirm any plan, absent the funding commitment of the Guarantors—thus, the Debtor claims it will be irreparably harmed if the injunction is not issued. As discussed below, the Debtor's premise, and the conclusion reached thereby, are each incorrect.

First of all, the Debtor's contention that it will be irreparably harmed if it cannot confirm its Amended Plan is ill founded. A major component of demonstrating the right to an injunction—and more specifically irreparable harm—is that the moving party has no adequate remedy at law.[5] *Vitro S.A.B. de C.V. v. ACP Master, Ltd. (In re Vitro)*, 2011 Bankr. LEXIS 2468 at *23 (Bankr. N.D. Tex. June 24, 2011). Here, the Debtor has may other good legal remedies. For example, it can simply allow AG/ICC's plan to be confirmed. Alternatively, as will be demonstrated, it could confirm a plan under which the Guarantors' assets are put to better use by properly capitalizing the Debtor, refinancing the property, and paying AG/ICC's claim in full.

Second, the Debtor gives no explanation why it cannot not simply revert to its earlier plan.

---

[5] Cases holding that a bankruptcy court need not adhere to this traditional requirement for injunctive relief predate *Winter* and thus are no longer good law.

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+ 1 858 523 6200

SDODMS1/714833.2

14

AG/ICC'S OBJECTION TO DEBTOR'S MOTION FOR EX PARTE TRO AND FOR PRELIMINARY INJUNCTION
CASE NO. BK-S-10-29932

The Debtor's initial plan proposed to fund the plan by capital contributions made by its "members" and otherwise through its operations, and did not call for an injunction. Under such a structure, the Debtor would get to keep the property, and AG/ICC would pursue the Guarantors, in which case AG/ICC would be able to seek satisfaction of the Debtor's obligations from the Guarantors, and, upon satisfaction by them in full, the Debtor would be relieved of the obligation to AG/ICC.[6] We are frankly hard pressed to determine why such an outcome would be detrimental to the Debtor. As stated earlier, irreparable harm is determined as to the impact on the Debtor, *not* the impact on the Guarantors.

Each of these alternative options are available to the Debtor. Each of these alternatives would preserve the ongoing operations of the Property. None of these alternatives would "completely Destroy the Debtor," as the Debtor contends. (Motion at 11).

### 2. The Debtor Cannot Establish Irreparable Harm Where the Requested Injunction—Which Is a Nonnegotiable Condition of the Plan Funders—Renders the Plan Non-confirmable as a Matter of Law

The Debtor cannot establish that it is irreparably harmed if the injunction does not issue on the basis that the Guarantors will not fund the plan if a post-confirmation injunction is not granted. This is because under Ninth Circuit precedent, the Amended Plan, to the extent it contains a post-confirmation injunction *is not confirmable in the first place*. Thus there cannot be any irreparable harm to the Debtor stemming from the Court's refusal to enjoin AG/ICC, as the Debtor contends there would be. (*See* Motion at 11 (stating that a judgment against the Guarantors would "likely" be the death knell of the Debtor's Plan)).

A bankruptcy court may not use *Section* 105 to achieve a result not contemplated by the Bankruptcy Code. Rather, the exercise of § 105 powers must be linked to another specific Bankruptcy Code provision. *In re Myrvang*, 232 F.3d 1116, 1125 (9th Cir. 2000). In the Ninth Circuit, a bankruptcy court simply does not possess the power under *section* 105 to enjoin non-debtors post-confirmation. *American Hardwoods, Inc. v. Deutsche Credit Corp. (In re American Hardwoods, Inc.)*, 885 F.2d 621 (9th Cir. 1989). The bankruptcy court's power to enjoin non-

---

[6] Moreover, the Guarantors would be subrogated to AG/ICC's claim.

15

AG/ICC'S OBJECTION TO DEBTOR'S MOTION FOR EX PARTE TRO AND FOR PRELIMINARY INJUNCTION
CASE NO. BK-S-10-29932

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+ 1 858 523 6200

SDODMS1/714833.2

debtors <u>ends at confirmation</u>. *Solidus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations)*, 502 F.3d 1086 (9th Cir. 2007) (stating that the maximum injunctive relief that the bankruptcy court could grant was a stay until confirmation of a reorganization plan).[7] Any injunction of non-debtors following confirmation is contrary to 11 U.S.C. § 524(e), because the discharge cannot apply to a non-debtor. *American Hardwoods*, 855 F.2d at 624.

Recently, in an unpublished opinion, the Bankruptcy Appellate Panel suggested that a debtor was not precluded from satisfying the first prong of a preliminary injunction, likelihood of success, where its proposed plan also contained a post-confirmation injunction. *See Bank of the West v. Fabtech Industries, Inc.*, 2010 Bankr. LEXIS 5097 (BAP 9th Cir. July 19, 2010) (Not for Publication). The court reasoned that the issue under the first prong was whether the debtor could confirm *any* plan, not whether that plan was confirmable. *Id.* at *13. The issue is very different here. Here, the issue arises in connection with the irreparable harm element, not the likelihood of success element.

Moreover, in *Fabtech*, there was no indication that the offending injunction was a condition of the funding and thus for the success of the plan itself. Indeed, the court suggested that the plan would likely be modified to exclude the injunction. Here, however, the Debtor is insisting that it cannot confirm the Amended Plan unless the offending post-confirmation injunction remains intact. The Debtor contends that it will experience irreparable harm as a result of the failure of its Amended Plan, which it claims will result if there is no injunction—because the Guarantors have made their funding contingent on receipt of a post-confirmation injunction against AG/ICC. That contention is a *non-sequitur* because the Debtor's Amended Plan can't be confirmed at all if it contains the offending post-confirmation injunction, because it would not meet the standard set forth in 11 U.S.C. § 1129(a)(1). *See In re Riverbend Leasing LLC*, 2011 Bankr. LEXIS 3586 (Bankr. S.D. Iowa May 13, 2011).

In sum, the failure of a plan that is not confirmable in the first place does not constitute irreparable harm.

---

[7] This particular statement was necessary to the Ninth Circuit's determination of the case before it and thus is not *dicta*.

16

AG/ICC'S OBJECTION TO DEBTOR'S MOTION FOR EX PARTE TRO AND FOR PRELIMINARY INJUNCTION
CASE NO. BK-S-10-29932

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+ 1 858 523 6200

SDODMS1/714833.2

## VI. THE BALANCE OF HARDSHIPS WEIGHS DECIDEDLY IN AG/ICC'S FAVOR

Here, the balance of harms tips decidedly in AG/ICC's favor. As stated above, there is no showing of irreparable harm to the Debtor. The Debtor is not harmed simply because it is divested of the opportunity to engage in a futile exercise to try to confirm a non-confirmable plan. And, as noted above, the Debtor has other readily available options, such as refinancing or the confirmation of AG/ICC's plan. On the other side of the coin, an injunction will severely harm AG/ICC. Here, as in *Coronado City Views, LLC v. Regatta Bay (In re Regatta Bay, LLC)*, 2009 U.S. Dist. LEXIS 124995 (D. Ariz. Oct. 30, 2009), the Guarantors have numerous other creditors and have extensive contingent liabilities. Templeton is being sued for divorce. He has also recently received a Demand Letter from the F.D.I.C., which claims may not be covered by directors' and officers' liability insurance. *See* Gertz Decl., Ex. A [196:20-198:16]. As such, any injunction would place AG/ICC at a serious disadvantage vis-à-vis other creditors of the Guarantors. At the same time, the Debtor is proposing to cram down its plan over AG/ICC's objection, and to impose a new note in place of its fully matured obligation to AG/ICC.

## VII. THE PUBLIC INTEREST IS NOT SERVED BY THE INJUNCTION

Where the Debtor has not met any of the other criteria for a preliminary injunction, the Court need not inquire into the final factor, whether the public interest is served by the injunction. In this respect, however, it cannot be maintained that the public interest—or even the interest in facilitating successful reorganization—is served by granting an injunction or fostering a plan that seeks to violate the provisions of the Bankruptcy Code and Ninth Circuit authority.

Moreover, the remedy of an injunction, which is equitable in nature, "is an extraordinary remedy never awarded as of right" and, in each case, courts must pay particular regard to the public consequences. *Winter* at 9. As such, the essential good faith of the Guarantors must necessarily be scrutinized. The facts demonstrate that Templeton, along with other affiliates, guaranteed the Debtor's obligation to AG/ICC. Then, Templeton, with full knowledge that the Debtor had defaulted and that his guaranty obligation to AG/ICC had been triggered, secretly caused at least ▮ ▮ in liquid assets to be transferred to a bankruptcy remote entity under his control. At or about the same time, Carefree Holdings, another Guarantor, caused an intercompany obligation by the

17

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+ 1 858 523 6200

AG/ICC'S OBJECTION TO DEBTOR'S MOTION FOR EX PARTE TRO AND FOR PRELIMINARY INJUNCTION
CASE NO. BK-S-10-29932

SDODMS1/714833.2

Debtor to Holdings then valued at near $5 million on the Carefree Holdings books to be sold to the Debtor's counsel for the paltry amount of $5,000. Now, Templeton, along with the other Guarantors, have colluded with the Debtor to demand that ICC/AG's claim against the Guarantors must be enjoined, as a contingency for their agreement to provide approximately $5 million in funding for the Debtor's plan (which amount is to be used, in substantial part, to pay off the aforementioned intercompany claim, which it sold for $5000). At the same time, the Debtor proposes in its Plan that the claim of ICC/AG is to be significantly impaired and that the Plan is to be crammed down over AG/ICC's objection. The Guarantors' proposal to transfer their assets to the Debtor in this fashion in order to facilitate partial payment to the AG/ICC and avoid their own personal liability "smacks of a fraudulent transfer." *Apollo Molded Products, Inc.*, 83 B.R. at 193-94. The facilitation of this scheme by a court of equity would not foster the public interest.

## VIII. CONCLUSION

For the reasons set forth above, and as will be further demonstrated by the evidence to be adduced at the hearing on the Debtor's Motion, AG/ICC respectfully requests that the Court would deny the Debtor's Motion.

Dated: November 22, 2011                    BAKER & McKENZIE LLP


By: /s/ Ali M.M. Mojdehi
    Ali M.M. Mojdehi
    Janet D. Gertz
    Brian W. Byun
    Allison M. Rego
    Attorneys for Creditor
    AG/ICC Willows Loan Owner, L.L.C.

18

AG/ICC'S OBJECTION TO DEBTOR'S MOTION FOR EX PARTE TRO AND FOR PRELIMINARY INJUNCTION
CASE NO. BK-S-10-29932

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+ 1 858 523 6200

SDODMS1/714833.2